NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220104-U

NO. 4-22-0104

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DONDRE M. ADAMS, | ) | No. 20CF401 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Casey Costigan, |
| | ) | Judge Presiding. |

---

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) the record did not rebut postplea
counsel's certification all necessary amendments were made to the motion to
withdraw defendant's guilty plea and (2) the trial court did not err in denying
defendant's motion to withdraw his guilty plea.

¶ 2    On October 14, 2021, pursuant to a fully negotiated plea, defendant, Dondre M.

Adams, was convicted of violating the Sex Offender Registration Act (SORA) (730 ILCS

150/3(d) (West 2020)) and sentenced to time served of 86 days in the county jail and 30 months'

probation. That same day, defendant filed a *pro se* motion to withdraw his guilty plea. On

November 15, 2021, defendant, through counsel, filed a motion to withdraw his guilty plea, and

counsel submitted a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July

1, 2017). Following a hearing, the trial court denied defendant's motion. Defendant appeals,

arguing (1) the record rebuts postplea counsel's certification all necessary amendments were

made to the motion to withdraw the guilty plea and (2) the court's decision was an abuse of discretion. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4            In May 2020, the State charged defendant with one count of violating SORA (*id.*) and two counts of resisting a peace officer (720 ILCS 5/31-1(a) (West 2020)). Regarding the violation of SORA, the State alleged, on or about May 13, 2020, through May 16, 2020, defendant, a sex offender required to register under SORA, failed to report his address in person to the Bloomington Police Department within three days of having established the residence.

¶ 5            Defendant was remanded to the custody of the McLean County Sheriff's Department on a $10,000 bond. Defendant filed a motion to reduce bond, which the trial court granted, reducing his bond to a $10,000 personal recognizance bond. Defendant was released from custody of the McLean County jail on June 29, 2020, after having been incarcerated for 43 actual days.

¶ 6            On October 14, 2021, defendant pleaded guilty. Pursuant to the plea agreement, in exchange for pleading guilty to violating SORA (1) defendant was to receive credit for 86 days (day-for-day credit equaling 43 actual days); (2) the two resisting a peace officer counts were dismissed, along with two other felony cases; and (3) defendant was (a) placed on 30 months' probation, (b) sentenced to fines and assessments as indicated in the financial sentencing order, and (c) prohibited from consuming, using, or possessing alcohol or cannabis. When asked if the plea agreement as recited by the trial court was accurate, defendant answered in the affirmative.

¶ 7            The trial court then admonished defendant on the effect his guilty plea could have on (1) his citizenship status, (2) the possibility of enhanced penalties with regard to future criminal convictions, and (3) his ability to obtain (a) public services, (b) employment, and (3)  a

firearm. , Defendant answered affirmatively to each admonishment. Defendant also affirmed he understood he could plead not guilty and require the State to prove his guilt beyond a reasonable doubt. Defendant affirmed he understood he was waiving (1) his right to trial (including his right to a jury trial), (2) his right to testify, and (3) his right to call witnesses on his behalf. When the court asked defendant whether his plea was voluntary, defendant answered it was.

¶ 8        The State provided the trial court with a factual basis for the guilty plea, which the court accepted. Defendant did not object to the factual basis. The court then reviewed defendant's appeal rights. Defendant indicated some frustration with the registration requirements imposed upon him. The court explained the importance of planning and using a calendar before proceedings adjourned.

¶ 9        Later the same day, defendant filed a *pro se* motion "To Withdraw Plea," stating: "The evidence do not fit charges circumstances beyond my control the Bloomington Police Department is closed on weekend and holidays so I can not go in and register as a sex offender."

¶ 10        On November 15, 2021, counsel for defendant filed a motion to withdraw the guilty plea, alleging defendant "had taken medication the day of the plea that interfered with his ability to fully understand the nature and consequences of his plea agreement." The State filed a response arguing the record clearly reflected his plea was knowing and voluntary.

¶ 11        On February 7, 2022, counsel for defendant filed a certificate of compliance pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The same day, defendant *pro se* filed an "Emergency" motion to withdraw his guilty plea, which stated: "On the above date and time Oct 18, 2022 I take a plea bout at the time and currently I am on 4 different pain pills and medical marijuana I did not know what was going on at the time do [*sic*] to I am still recovering from neck surgery."

¶ 12    During the February 8, 2022, hearing on defendant's motion to withdraw, defendant's counsel requested defendant's *pro se* February 7, 2022, motion to withdraw his plea be joined to counsel's formal motion to withdraw as an "affidavit." The trial court indicated defendant's motion was "in the file," and it had read it and took judicial notice of it. Counsel argued because "things were happening quickly for [defendant]," coupled with his being under the influence of medical cannabis and prescription medication, defendant "didn't fully understand the implication of the plea" agreement. The State argued it was defendant's burden to show "substantial objective proof" regarding any error in his plea and, by statute, "prescription drugs" do not afford defendant a presumption he was "unfit to enter into a plea agreement." The State also noted defendant "voiced some hesitation" when agreeing to the plea and argued the court "took extra time to explain things to" defendant to ensure he was "fully aware" of the actions he was taking. The court then asked defendant if he had any additional statement to make. Defendant indicated he did not.

¶ 13    In denying defendant's motion to withdraw, the trial court stated it had reviewed defendant's motion, the Rule 604(d) certificate, the State's response to defendant's motion, and the transcript of the guilty plea proceedings. The court explained, in conducting such hearings, it evaluates whether the defendants before the court are aware of what is happening and participating voluntarily. The court then addressed its observations of defendant at the time his plea was entered. The court noted defendant had questions, which it addressed. The court also addressed the potential impairment of defendant by stating, "there may have been a situation where you were taking some medicine, whether it be marijuana, whether it be other substances, medicine" and found it was "not a basis to go ahead and say that somebody doesn't understand." The court concluded defendant knowingly and voluntarily pleaded guilty.

¶ 14        This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16        On appeal, defendant argues (1) the record rebuts postplea counsel's certification all necessary amendments were made to the motion to withdraw the guilty plea and (2) the trial court's decision to deny defendant's motion to withdraw his guilty plea was an abuse of discretion.

¶ 17                          A. Compliance With Rule 604(d)

¶ 18        First, defendant argues the record rebuts postplea counsel's certification all necessary amendments were made to the motion to withdraw the guilty plea. Specifically, defendant contends his counsel never specified what medications defendant had taken and failed to explain how those medications affected defendant's judgment on the date of the guilty plea.

¶ 19        Rule 604(d) requires counsel representing a defendant on a motion to withdraw a guilty plea to certify the following:

> "[T]he attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the guilty plea and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

"[C]ounsel must strictly comply with 'each of the provisions of Rule 604(d) ***.' " *People v. Gorss*, 2022 IL 126464, ¶ 19, 194 N.E.3d 490 (quoting *People v. Janes*, 158 Ill. 2d 27, 33, 630 N.E.2d 790, 792 (1994)). This court generally considers the certificate itself to evaluate

compliance with Rule 604(d); however, the certificate may be refuted by the record. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 37, 186 N.E.3d 467. We review *de novo* whether counsel strictly complied with the provisions of Rule 604(d). *Gorss*, 2022 IL 126464, ¶ 10.

¶ 20 Rule 604(d) requires, when a motion to withdraw guilty plea "is based on facts that do not appear of record[,] it shall be supported by affidavit." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Here, the record's only relevant reference to defendant's use of medication is the trial court's discussion of defendant's medical cannabis usage during the plea proceedings. Given there is no reference by the court to any other potential medication use by defendant, and defendant's *pro se* February 7, 2022, filing mentions the combination of medical cannabis and other analgesics, the affidavit in compliance with Rule 604(d) is appropriate. Thus, we address whether defendant's *pro se* filing on February 7, 2022, sufficiently complied with Rule 604(d) to qualify as an affidavit. Affidavits amount to " ' "a substitute for testimony taken in open court." ' " *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 745, 946 N.E.2d 885, 893 (2011) (quoting *Robidoux v. Oliphant*, 201 Ill. 2d 324, 338, 775 N.E.2d 987, 995 (2002), quoting *Fooden v. Board of Governors of State Colleges & Universities of Illinois*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971)). An affidavit "must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered affidavits." *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494, 782 N.E.2d 212, 214 (2002). Defendant's affidavit comes from the standardized statewide approved forms published on the Illinois Supreme Court website. The second page of defendant's filing contains defendant's certification averring what he wrote is "true and correct." Section 1-109 of the Code of Civil Procedure permits affidavits to be verified by certification (735 ILCS 5/1-109 (West 2020)). Thus, defendant's filing sufficiently qualifies as an affidavit for Rule 604(d) purposes.

¶ 21        In support of his contention postplea counsel was required to detail with specificity what medications he had taken and how they impaired him in the motion to withdraw the guilty plea, defendant cites *People v. Bridges*, 2017 IL App (2d) 150718, 87 N.E.3d 441. *Bridges* does not, however, support defendant's contention. There, the appellate court accepted the defendant's argument counsel's failure to attach an affidavit supporting the factual allegations in the motion to withdraw the guilty plea which were not of record or to present any evidence in support of the defendant's motion demonstrated a lack of compliance with Rule 604(d). *Id.* ¶ 9. Unlike *Bridges*, defendant here is not complaining any factual allegations related to his use of medication should have been supported by affidavit where no such affidavit exists; rather, defendant is arguing the medication defendant had taken and how it affected him—as mentioned in defendant's affidavit—should have been developed by postplea counsel in more detail.

¶ 22        In the motion to withdraw his plea, postplea counsel alleged defendant, "had taken medication the day of the plea that interfered with his ability to fully understand the nature and consequences of his plea agreement." Then, during the hearing on the motion to withdraw, postplea counsel sought to admit defendant's February 7, 2022, *pro se* motion as a supporting affidavit. Postplea counsel did not call defendant to testify but did provide defendant's affidavit as evidence in support of defendant's contention he was impaired by medications on the date of his plea. The trial court specifically asked defendant if he had anything additional to offer beyond what was already said by his counsel or presented in any court filings. Defendant did not offer any additional information to the court. The court, after hearing arguments and reviewing the record, recalled defendant's demeanor during the plea proceedings before denying

defendant's motion. This is a critical distinction from *Bridges*, where the trial court had relied solely on "its own recollection of defendant's demeanor during the plea proceedings." *Id.*

¶ 23        Defendant next cites the dissenting opinion in *United States v. Howard*, 381 F.3d 873, 883-86 (9th Cir. 2004) (Kleinfeld, J., dissenting), in support of his position counsel was ineffective. In *Howard*, the defendant was taking a prescribed narcotic painkiller due to a leg injury for which he had undergone surgical procedures. *Id.* at 876. Just prior to commencing a jury trial, the defendant pleaded guilty, and the trial court specifically addressed whether the defendant was under the influence of any narcotic. *Id.* The defendant said he was under the influence of a narcotic painkiller. *Id.* The defendant's guilty plea was accepted. *Id.* On appeal, the issue was whether the defendant's counsel was ineffective for permitting the defendant to plead guilty while under the influence of a narcotic painkiller. *Id.* at 877.

¶ 24        In this case, defendant notes the dissenting opinion's discussion of the effect pain medication can have on an individual's judgment and argues its relevancy to his case. We disagree. Justice Kleinfeld's reasoning in *Howard* about how narcotic medications can impair an individual's judgment is not at issue. For example, Justice Kleinfeld states narcotic medications can "sometimes dull the wits." *Id.* at 884. This is an uncontroversial assessment of narcotic medications generally. Justice Kleinfeld continues, "[t]hey can also sharpen them, if the pain is so excruciating that the narcotics enable the mind to focus on something other than the pain." *Id.* This is also a general assessment of narcotic medications. However, the issue here is not whether such medication can impair an individual's judgment. Instead, the issue is whether medications impaired defendant during the plea hearing. For the reasons discussed, the record on appeal does not demonstrate defendant was impaired or otherwise failed to understand the nature and consequences of his plea agreement at the time he entered it.

¶ 25 Defendant also cites *United States v. Damon*, 191 F.3d 561, 565 (4th Cir. 1999), for the proposition the trial court should ascertain the effect a medication may have on a defendant's ability to enter into a plea agreement where the court knows the defendant is medicated. However, defendant cites no binding precedent to support such a requirement. See *People v. Kidd*, 129 Ill. 2d 432, 457, 544 N.E.2d 704, 715 (1989) (holding federal cases are not binding authority in our state courts). Accordingly, defendant has failed to demonstrate the trial court was required to specifically inquire of defendant whether he was impaired by cannabis or medication at the time his plea was taken.

¶ 26 Defendant also makes an underdeveloped ineffective assistance of counsel argument related to his contention postplea counsel did not specifically detail in the motion to withdraw what medications defendant had taken and how they impaired him. To warrant a withdrawal of a guilty plea on this basis, a defendant "must show (1) deficient performance (*i.e.*, counsel's representation fell below an objective standard of reasonableness) and (2) prejudice (*i.e.*, but for counsel's unprofessional errors, the result of the proceeding would have been different)." *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39, 85 N.E.3d 815; *Strickland v. Washington*, 466, U.S. 668, 687-88, 694 (1984). "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755. Where there is no prejudice, the court does not need to decide whether counsel's performance was deficient. *People v. Evans*, 186 Ill. 2d 83, 94, 708 N.E.2d 1158, 1164 (1999). "In order to satisfy the 'prejudice' requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *People v. Pugh*, 157 Ill. 2d 1, 15, 623 N.E.2d 255, 261 (1993). "Although we recognize that there may be circumstances where a

defendant could prove that the deficient performance affected the outcome of the plea process in other ways, as with all applications of the second prong of the *Strickland* test, the question whether a given defendant has made the requisite prejudice showing will turn on the facts of a particular case." *People v. Hughes*, 2012 IL 112817, ¶ 65, 983 N.E.2d 439 (citing *Strickland*, 466 U.S. at 695-96).

¶ 27          In this case, defendant has not articulated any prejudice beyond stating that postplea counsel's failure to specify what medications defendant consumed and how they impaired him would have "arguably resulted in [defendant's] waiver on this appeal of the issue that his plea was involuntary." However, the prejudice prong for an ineffective assistance claim for a withdrawal of a guilty plea requires a defendant to show a reasonable probability, but for his postplea counsel's error, he would not have pleaded guilty and would have insisted on going to trial.

¶ 28          Here, postplea counsel's motion to withdraw defendant's guilty plea alleged the medications defendant consumed interfered with his ability to understand the nature and consequences of his plea agreement. The record does not indicate defendant was impaired or failed to understand the nature and consequences of his plea agreement. The affidavit attached to postplea counsel's motion alleged defendant did not know what was happening during the plea proceedings. However, the colloquy between defendant and the trial court refutes this contention. In fact, the court indicated if defendant was not voluntarily pleading guilty, it would not accept the plea and would set the case for trial. Defendant insisted on pleading guilty and twice affirmed to the court he was doing so voluntarily. Defendant engaged with all of the court's admonishments, and the court did not identify any behavior or demeanor exhibited by defendant indicative of impairment. Defendant voiced his frustration with the registration requirements

imposed upon him and engaged the court with questions. Defendant espoused reasons to negate his accountability for failing to register. He reiterated those reasons later the same day in his initial *pro se* motion to withdraw his guilty plea. The record does not show defendant was unaware of what was transpiring during the plea proceedings. As such, defendant has not met his burden to establish the necessary showing under *Strickland* he was prejudiced by postplea counsel.

¶ 29                    B. Denial of the Motion to Withdraw the Guilty Plea

¶ 30        Defendant argues the trial court abused its discretion in denying his motion to withdraw his guilty plea. Specifically, defendant contends nothing in the record contradicts or rebuts his claim prescription  medications impaired his ability to knowingly enter into a plea of guilty.

¶ 31        There is no absolute right to withdraw a guilty plea. *Hughes*, 2012 IL 112817, ¶ 32. "Rather, [defendant] must show a manifest injustice under the facts involved." *Id.* "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* The "decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *Id.* "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519, 922 N.E.2d 330, 338 (2009). A "reviewing court focuses on whether the guilty plea was affirmatively shown to have been made voluntarily and intelligently." *Id.* at 520.

¶ 32    In this case, defendant argues his impairment claim is unrebutted in the record. Defendant maintains the trial court did not inquire whether defendant was under the influence such that his ability to understand the nature and consequences of his plea was impaired. We disagree.

¶ 33    The trial court opened its inquiry during the hearing on defendant's guilty plea, stating:

> "[Defendant], I'm going to go over a number of things here with you today to make sure that we all agree as to what's going to happen in these cases. I also want to make sure that you understand your rights before you plead guilty to anything. If I say something today that you do not understand or that you do not agree with, I want you to stop me and let me know so I can go over it in more detail with you; all right?"

The court then went through various admonishments, following which defendant affirmatively stated on the record he understood or agreed to. Regarding defendant's known use of cannabis, the court—following a recitation of the negotiated plea agreement—stated:

> "I heard you mention you have a [medical cannabis] card. If you have a card, I'm not going to second-guess your doctors. You have to use whatever medication in accordance with the prescription that the doctor wrote. Assuming you're doing that, then there's not going to be any problem."

Directly following the court's statement, defendant agreed the court recited the agreement accurately. The court then went through the various other required admonishments, including his waiver of his right to trial, to which defendant acknowledged he understood and agreed. Further,

defendant affirmatively answered he was pleading guilty voluntarily. The court specifically found defendant's behavior and responses during the plea proceedings indicated he understood and was not impaired by any substance. The record belies defendant's contention his claim of impairment is unrebutted by the record.

¶ 34    Defendant argues his attempt to assert his fifth amendment right against self-incrimination (U.S. Const., amend. V) when the trial court asked him if he was forced to plead guilty shows the involuntary nature of his plea. Defendant also argues his *pro se* motion to withdraw his guilty plea contesting the facts of the case further indicates he failed to understand the consequences of his plea.

¶ 35    However, defendant's contention he did not willingly enter his plea is directly rebutted by his interactions with the trial court. When the court inquired into the voluntariness of defendant's plea, the following colloquy took place:

"THE COURT: Has anybody forced you to do this today?

THE DEFENDANT: I'm pleading the fifth right now. It's like, you know, damned if I do, damned if I don't.

THE COURT: Okay. Let me go over a couple of things here with you.

The Fifth Amendment wouldn't have applicability as to whether someone has forced you to do something here today. That is a right against self incrimination. So that's not an issue here.

One of the things that I need to make sure of here before I accept your plea that I have before me is that you're doing so in a knowing and voluntary manner. That you're pleading guilty in a knowing and voluntary manner, that you understand everything here. So that's one of the things that I need to make sure of

- 13 -

as part of my job is that nobody is being forced to do something here today, they're doing something voluntarily. Whether they agree with it or disagree with it, they're doing something voluntarily; okay?

So that's the purpose of my question here. If you're saying, no, someone is forcing me to do something, I'm not going to accept the plea. I will set your case for trial and we'll go to trial.

THE DEFENDANT: Let's just get it over with today, get it out of the way.

THE COURT: But you are doing so voluntarily?

THE DEFENDANT: Yes.

THE COURT: And nobody is forcing you to do anything here today; am I correct on that?

THE DEFENDANT: Correct.

THE COURT: Okay. Has anybody made any promises any different than what I've gone over with you here today? Has anybody promised you anything different than what I've just gone over with you here today?

THE DEFENDANT: No."

Thus, defendant's initial hesitation and misapplication of the fifth amendment does not show unwillingness. The court explained the purpose of its question and reiterated defendant's right to a trial. Defendant then insisted on proceeding with the plea proceedings. The court explicitly followed up with defendant regarding whether he was doing so voluntarily with two additional questions, to which defendant answered in the affirmative.

¶ 36        After concluding the plea was knowingly and voluntarily made, the trial court

accepted the factual basis. When asked about questions regarding his appeal rights, defendant and the court again interacted as follows:

"THE DEFENDANT: No. I do have a—I have—

THE COURT: Take a deep breath and slow it down here.

THE DEFENDANT: I do have a question.

THE COURT: All right. I want to answer your question. Go ahead.

THE DEFENDANT: I know in the first plea that I pleaded to in '94 I think it was, it says I have to register 10 years, 10 years only. Here it's 30 years later and I'm still registering as a sex offender.

THE COURT: I don't know the answer to that question because I don't have your other files here. If you were on probation and your probation was extended, or something of that nature, or if there was a re-sentence on that case, that may extend things here.

MR. BUSSAN [(DEFENSE COUNSEL)]: I would advise the Court that in [defendant's] presence I called the Illinois State Police and [defendant] is a lifetime registrant. So that's where we're at.

THE COURT: Okay. I don't know what you were admonished to back in 1994, or told back in 1994, *** but it sounds as if, what [defense counsel] is saying, that there's a lifetime registration here. That's something you definitely want to get cleared up here so you know when you're supposed to register and when you're not. I don't want that confusion.

THE DEFENDANT: Since 1994 until now, a few times I was in DOC, I'm registering as a sex offender until then, but it's not my fault the police department is closed holidays and weekends. It's not my fault."

After the plea proceedings concluded, defendant filed a *pro se* motion to withdraw his guilty plea, alleging: "The evidence do not fit charges circumstances beyond my control the Bloomington Police Department is closed on weekend and holidays so I can not go in and register as a sex offender." Defendant's initial *pro se* motion essentially reiterates defendant's final statement to the trial court at the conclusion of the plea proceedings. Defendant argues this is further evidence he did not understand the nature and consequences of his guilty plea.

¶ 37     The record reflects defendant's initial hesitation regarding the plea agreement when he attempted to plead the fifth amendment. After the trial court explained how the fifth amendment functions and indicated it would set defendant's case for trial, defendant insisted on pleading guilty. Thereafter, defendant reaffirmed twice his guilty plea was voluntary. After hearing his appeal rights, defendant expressed frustration with being required to register as a sex offender, stating he was under the impression he was only required to do so for 10 years. However, defendant's counsel explained to the court defendant was informed his registration requirements would be for life. Immediately afterwards, defendant expressed frustration about the operating hours of the Bloomington Police Department. Defendant reiterated his frustration in his *pro se* motion to withdraw his guilty plea filed later the same day. However, nothing in the record suggests defendant failed to comprehend he was pleading guilty to failing to register a change of address as a registered sex offender. Instead, the record demonstrates defendant's aggravation with having to register as a sex offender and his frustration with the perceived challenges in having to register a change of address whenever he moves.

¶ 38                                    C. Charging Instrument

¶ 39            While defendant does not challenge the adequacy of the charging instrument, our

review of the record shows the information used to charge him incorrectly cites subsection (d) of

section 3 of SORA. See *Ballinger v. City of Danville*, 2012 IL App (4th) 110637, ¶ 13, 966

N.E.2d 594 (stating forfeiture limits the parties and does not affect this court's jurisdiction). The

factual allegations of the information, the trial court's recitation of the information, and the

factual basis provided by the State which defendant agreed was substantially correct clearly

reference subsection (b) of section 3. This court has held "the mere reference in a charging

instrument to an incorrect chapter or section of a statute is regarded as a formal rather than a

substantive defect." *People v. McBrien*, 144 Ill. App. 3d 489, 495, 494 N.E.2d 732, 736 (1986).

A formal defect in the charging instrument does not warrant reversal absent the defendant

demonstrating prejudice by the erroneous citation. *Id.* Our review of the record does not suggest

defendant was prejudiced by the erroneous subsection citation. The subsection (d) error appears

to be typographical, and the language used in the information and at the plea clearly reflect

defendant was being accused of and pleaded guilty to subsection (b) of section 3 of SORA. See

*People v. Cohn*, 2014 IL App (3d) 120910, ¶ 16, 20 N.E.3d 1285 (upholding the defendant's

conviction where it was clear from the factual basis of the indictment what the defendant was

being accused of despite the wrong section number being cited). We find the erroneous

subsection citation to be a formal defect not warranting reversal.

¶ 40            In sum, the record on appeal does not show defendant was impaired or otherwise

failed to understand the consequences of his guilty plea. While defendant may have been

frustrated with his situation, there is a distinction between reluctance and incomprehension. As

the trial court noted in finding defendant was not impaired, defendant "[m]ay not have liked it,

but [he] understood what was going on." The court did not err in denying defendant's motion to withdraw his guilty plea.

¶ 41                                III. CONCLUSION

¶ 42        For the reasons stated, we affirm the trial court's judgment.

¶ 43        Affirmed.